**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELVYS REYES, ALBERT RAMON RIVERA, PERFECTO PEREZ, RAMON SERRA, LUIS MANUEL SUAREZ, and GENESIS CANEPA, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>-against-<br><br>THE PICNIC BASKET, INC., 805 THE PICNIC BASKET LLC, Y.D.V.S. LLC, JOHN DOE CORP., YARIV STAV and DAVID STAV, Jointly and Severally,<br><br>                    Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

        Plaintiffs Elvys Reyes, Albert Ramon Rivera, Perfecto Perez, Ramon Serra, Luis Manuel Suarez, and Genesis Canepa (together, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## **NATURE OF THE ACTION**

1.      Plaintiffs are former food preps, dishwashers, counter employees, and delivery employees at Defendants' Mediterranean café/deli and Hawaiian poke establishments located in Manhattan.

2.      For their work, despite the fact that Plaintiffs were required to work well in excess of forty (40) hours per week, Plaintiffs were paid on a straight-time hourly basis with no overtime premiums for hours worked over forty (40).

3.      Plaintiffs also did not receive spread-of-hours premiums when they worked shifts of ten (10) or more hours per day, did not receive the full amount of gratuities left by customers for their service, and did not receive proper wage notices and wage statements.

4.      Plaintiffs bring this action to recover unpaid overtime premiums owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums, unlawful withholding of gratuities, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

5.      Plaintiffs bring their FLSA claim on behalf of themselves and all other similarly situated employees who worked for Defendants at any time during the three (3) years prior to the commencement of this action.

6.      Plaintiffs bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees who worked for Defendants in New York at any time during the six (6) years prior to the commencement of this action.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendants' business is located in this district.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

10.     Plaintiff Elvys Reyes ("Reyes") was, at all relevant times, an adult individual residing in Bronx County, New York.

11.     Plaintiff Albert Ramon Rivera ("Rivera") was, at all relevant times, an adult individual residing in Bronx County, New York.

12.     Plaintiff Perfecto Perez ("Perez") was, at all relevant times, an adult individual residing in Kings County, New York.

13.     Plaintiff Ramon Serra ("Serra") was, at all relevant times, an adult individual residing in New York County, New York.

14.     Plaintiff Luis Manuel Suarez ("Suarez") was, at all relevant times, an adult individual residing in Queens County, New York.

15.    <u>Plaintiff Genesis Canepa</u> ("Canepa") was, at all relevant times, an adult individual residing in Bronx County, New York.

16.    During the relevant time period, Plaintiffs performed work for Defendants in their Mediterranean café/deli and Hawaiian poke establishments, located at 65 West 37th Street, New York, NY 10018 and 805 3rd Avenue, New York, NY 10022, respectively.

17.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**<u>Defendants</u>:**

18.    The Picnic Basket, Inc. is an active New York Corporation with its principal place of business at 65 West 37 Street, New York, NY 10018.

19.    805 The Picnic Basket LLC is an active New York Corporation with its principal place of business at 805 3rd Avenue, New York, NY 10022.

20.    Y.D.S.V. LLC is an active New York Corporation doing business as "The Picnic Basket" with its principal place of business at 65 West 37 Street, New York, NY 10018.

21.    John Doe Corp. is an active New York Corporation doing business as "Hokey Poké" with its principal place of business at 805 3rd Avenue, New York, NY 10022.

22.    The Picnic Basket, Inc., 805 The Picnic Basket LLC, Y.D.S.V. LLC, and John Doe Corp. are hereinafter referred to collectively as the "Picnic Basket Enterprise" or the "Corporate Defendants."

23.    At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FSLA.

24.    Upon information and belief, Defendant Yariv Stav ("Y. Stav") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies,

including the unlawful practices complained of herein.

25.    Upon information and belief, Defendant David Stav ("D. Stav" and, together with Y. Stav, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

26.    The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

27.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

28.    At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

29.    Upon information and belief, at all relevant times, the Corporate Defendants has had gross revenues in excess of $500,000.00

30.    At all relevant times, the Corporate Defendants has used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATION

31.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since January 8, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees (the "Collective Action Members").

32.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

33.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

34.    Pursuant to the NYLL, Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since January 8, 2012 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees (the "Class Members").

35.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

36. <u>The Class Members are so numerous that joinder of all members is impracticable</u>. Upon information and belief, there are approximately forty (40) Class Members.

37. <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

      a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

      b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

      c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

      d.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

      e.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

      f.  whether Defendants failed to provide proper wage notices to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

      g.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

      h.  whether Defendants are liable for all damages claimed hereunder, including but

not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

38.     <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are food service employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

39.     <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

40.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

41.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

42.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

43.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurants

44.     At all relevant times, Defendants have been in the food service business.

45.     Upon information and belief, the Individual Defendants have owned, operated, and managed The Picnic Basket Mediterranean café/deli located at 65 West 37th Street, New York, NY 10018, The Picnic Basket Mediterranean café/deli located at 805 3rd Avenue, New York, NY 10022, and Hokey Poké Hawaiian restaurant located at 805 3rd Street, New York, NY 10022.

46.     Upon information and belief, Hokey Poké and The Picnic Basket located at 805 Third Avenue, share the same kitchen where they often rotate employees from one restaurant to the other, and also sometimes share food inventory.  Additionally, upon information and belief, employees who work for Hokey Poké restaurant, have been paid with pay stubs under "The Picnic Basket" corporate name.

47.     Upon information and belief, Defendants employ approximately twenty-five (25) individuals between both The Picnic Basket locations, and an additional approximately ten (10) employees at Hokey Poké at any one time.

48.     Upon information and belief, Defendants share employees among their restaurants and employ all of their restaurant employees pursuant to the same pay practices and policies.

49.     Upon information and belief, Defendants operate all of their restaurants through common management, ownership and financial control.

50.      The Individual Defendants David and Yariv Stav are a constant presence at The Picnic Basket café/deli located at 65 West 37th Street, as well as at the 805 3rd Avenue location, and take an active role in ensuring that their restaurants are run in accordance with their procedures and policies.

**Plaintiffs' Work for Defendants**

51.    Plaintiff Elvys Reyes worked for Defendants at The Picnic Basket located at 65 West 37th Street as a food prep and delivery employee from in or around 2015 through on or about April 26, 2017 (the "Reyes Employment Period").

52.    Throughout the Reyes Employment Period, Reyes generally worked five (5) days per week, with Saturdays and Sundays off.  During the first portion of his employment period, from in or around 2015 to the end of 2016, Reyes typically worked from approximately 7:00 am to between approximately 5:00 pm and 6:00 pm, ten (10) to eleven (11) hour shifts, for a total of approximately fifty (50) to fifty-five (55) hours per week.

53.    During the last portion of his employment period, from in or around the end of 2016 to April 2017, Reyes typically worked five (5) days per week from approximately 8:00 am to between approximately 4:00 pm and sometimes 5:00 pm and 6:00 pm, shifts of a minimum of eight (8) hours per day, for a total of between approximately forty (40) to forty-five (45) hours per week, and sometimes more.

54.     For his work, from in or around 2015 to in or around 2016, Reyes was paid nine dollars and fifty cents ($9.50) per hour, including those hours beyond forty (40) in a given workweek.  From in or around the beginning of 2017 to the end of his employment period, Reyes was paid eleven dollars ($11.00) per hour, including those beyond forty (40) in a given work week.

55.    Despite the fact that Reyes often worked as a delivery employee at The Picnic Basket, Reyes was not permitted to retain the full amount of gratuities left by those customers in credit cards or cash.  The portion of gratuities retained by Defendants either in cash or credit cards varied from order to order, but most of the time was approximately fifty per cent (50%) of the amount left as a gratuity for Reyes.  When Reyes made a delivery for catering orders to offices or

big companies, where the gratuities left by the customers was typically in the hundreds of dollars, Reyes typically received from Defendants approximately ten to fifteen dollars ($10.00 - $15.00) each as a tip for those deliveries.  Tips were usually paid by Defendants with Reyes' regular biweekly payment period.

56.    Throughout the Reyes Employment Period, Reyes was paid biweekly in a combination of check and cash.  While Reyes' wages were typically accompanied by a pay stub, the pay stubs were inaccurate in that they only reflected a portion of the hours Reyes worked during the specific pay period, usually forty (40) hours each week, or less.  The remaining hours worked by Reyes beyond forty (40) in a work week, were paid in cash at the same hourly rate as his regular hours without any corresponding pay stub or wage statement.

57.    At the beginning of his employment period, Defendants did not track Reyes' work hours through any formal timekeeping method.   At some point during 2015, Defendants started to track the hours worked by Reyes with a computerized time clock machine, which usually provided a small sheet of paper with the time Reyes punched in punched out.  Many times, when Reyes compared those small receipts with the hours showed in his pay stubs, there were hours missing in his pay stubs for which he was not compensated. When Reyes complained to the Individual Defendants to pay him for the missing hours, he would generally be paid for those hours but at the same rate as his regular hours even though such hours were typically overtime hours.

58.    <u>Plaintiff Albert Ramon Rivera</u> worked for Defendants at The Picnic Basket located at 65 West 37th Street as a food prep and delivery employee from in or around April 2016 to in or around October 2017 (the "Rivera Employment Period").

59.    Throughout the Rivera  Employment Period, Rivera generally worked five (5) days per week, with Saturdays and Sundays off.  During the first portion of his employment period, for

about four (4) to six (6) months, Rivera typically worked from approximately 8:00 am to between approximately 5:00 pm and 5:30 pm, nine (9) to nine and one-half (9.5) hour shifts, for a total of approximately forty-five (45) to forty-seven and one half (47.5) hours per week. For the remainder of his employment period, from in or around the end of 2016 to in or around October 2017, Rivera typically worked five (5) days per week from approximately 7:00 am to approximately 7:00 pm, shifts of approximately (12) hours per day, for a total of approximately sixty (60) hours per week.

60.     For his work, throughout the Rivera Employment Period, Rivera was paid eleven dollars ($11.00) per hour, including those beyond forty (40) in a given work week.

61.     Despite the fact that Rivera often worked as a delivery employee at The Picnic Basket, Rivera was not permitted to retain the full amount of gratuities left by those customers in credit cards or cash when they paid their invoices. The portion of gratuities retained by Defendants either in cash or credit cards varied from order to order, but most of the time was approximately fifty per cent (50%) of the amount left as a gratuity for Rivera. When Rivera made a delivery for catering orders to offices or big companies, where the gratuities left by the customers was typically in the hundreds of dollars, Rivera typically received from Defendants only approximately ten to fifteen dollars ($10.00 - $15.00) each as a tip for those deliveries. Tips were usually paid by Defendants with Rivera's regular biweekly payment period.

62.     Throughout his entire employment period, Plaintiff Rivera was paid biweekly in a combination of check and cash. The pay stubs that accompanied the check payment were inaccurate and only reflected a portion of the hours Plaintiff Rivera worked during the specific work period, usually forty (40) hours each week, or less. The remaining hours worked by Plaintiff Rivera beyond forty (40) in a work week, were paid in cash at the same amount of his regular hours.

63.     At the beginning of his employment period, Defendants did not track Plaintiff Rivera work hours through any reliable method.   In or around 2015, Defendants started to track the hours worked by Plaintiff with a computerized punching machine, which usually provided a small sheet of paper with the time Plaintiff punched in and the time Plaintiff Rivera punched out. Many times Plaintiff Rivera compared those small receipts with the hours showed in his pay stubs and had to request individual defendants to make up for the missing hours, that in fact were paid by defendants, but at the same rate as his regular hours.

64.     Plaintiff Perfecto Perez worked for The Picnic Basket located at 65 West 37th Street, as a delivery employee and food prep from in or around November 2012 through in or around October 2017 (the "Perez Employment Period").

65.     At the beginning of his employment period in or around 2012, for a period of a couple of months when Perez was only working as a delivery employee, Plaintiff Perez generally worked four (4) days per week from approximately 11:00 am to approximately 3:00 pm, four (4) hours shifts, for a total of approximately sixteen (16) hours per week. After that short period of time Plaintiff Perez typically worked five (5) days per week, with the following schedule: Mondays, from approximately 7:30 am to approximately 4:00 pm, and Tuesdays through Fridays from between approximately 8:00 am and 9:00 am to approximately 5:00 pm, for a total of approximately forty and one-half (40.5) hours to forty-four and one-half (44.5) hours per week.

66.     In or around 2015, for a period of approximately five (5) months, Plaintiff Perez's schedule was reduced to five (5) days per week, three (3) hours per day, for a total of fifteen (15) hours per week.  After that short of period in or around 2015 until the end of his employment in 2017, Plaintiff Perez generally worked five (5) days per week, from between approximately 9:00 am and 10:00 am, to approximately 4:00 pm, for a total of approximately thirty (30) to thirty-five

(35) hours per week.

67.     For his work, Plaintiff Perez was paid in or around 2012, for the short period of time he was only doing deliveries, the amount of five dollars ($5.00) per hour. After that short time period, until in or around 2013, when Plaintiff Perez was doing delivery and food prep work, he was paid five dollars and fifty cents ($5.50) per hour.  In or around 2013 to in or around 2014, when he was the only delivery employee at the café/deli and he was performing work as food prep also, he was paid the amount of eight dollars and fifty cents ($8.50) per hour.  In or around 2015, for a period of approximately five (5) months when he was doing only delivery work, his payment was reduced again to five dollars ($5.00) per hour.  In or around 2016 to the end of his employment period, Plaintiff Perez was paid seven dollars and fifty cents ($7.50) per hour.  Throughout his entire employment period, Plaintiff Perez was paid the same rate for all hours worked, including hours beyond forty (40) in a given work week.

68.     Despite the fact that Perez often worked as a delivery employee at The Picnic Basket, Perez was not permitted to retain the full amount of gratuities left by customers in credit cards or cash when they paid their invoices.  The portion of gratuities retained by Defendants either in cash or credit cards varied from order to order, but most of the time was approximately fifty per cent (50%) of the amount left as a gratuity for Perez.  When Perez made a delivery for catering orders to offices or big companies, where the gratuities left by the customers was typically in the hundreds of dollars, Perez typically received from Defendants approximately ten to fifteen dollars ($10.00 - $15.00) each as a tip for those deliveries.  Tips were usually paid by Defendants with Perez's regular biweekly payment period.

69.     From the beginning of his employment period in or around 2012 to in or around 2015, Plaintiff Perez received his payment in cash for all hours worked, including those beyond

forty (40), at the same rate. From in or around 2015 to in or around 2017 at the end of his employment period, Plaintiff Perez received his wages by check.  The pay stubs that accompanied the check payments were generally inaccurate and only reflected a portion of the hours Plaintiff Perez worked during the specific work period.  All hours worked by Plaintiff Perez, including those he worked beyond forty (40) were paid at the same rate.

70.     During his entire employment period at the café/deli Defendants did not track the hours worked by Plaintiff Perez hours through any reliable method.  Defendants only recognized for his payment the amount of hours he was "scheduled" to work, but any hours worked out of that time frame, were not paid at all by Defendants.

71.     Plaintiff Ramon Serra worked for The Picnic Basket located at 65 West 37th Street, as a dishwasher, counter employee, food prep, and delivery employee from in or around 2014 to in or around August 2017 (the "Serra Employment Period").

72.     From the beginning of the Serra Employment Period to in or around February 2017, Plaintiff Serra generally worked five (5) days per week, from approximately 9:00 am to approximately 6:30 pm, nine and one-half (9.5) hours shifts, for a total of approximately forty-seven and one-half (47.5) hours and sometimes more. At times, when Serra was required to devote more time to food prep responsibilities, he was required to report to work at around 7:00 am, increasing his shift to approximately eleven and one-half (11.5) hours.  From in or around February 2017, when he suffered an accident at work, until the end of his employment period, Plaintiff Serra's schedule was reduced to shifts of eight (8) hours per day, five (5) days per week, for a total of approximately forty (40) hours per week.

73.     For his work, throughout his entire employment period, Plaintiff Serra was paid ten dollars and fifty cents ($10.50) per hour, including those beyond forty (40) in a given work week.

74.    Despite the fact that Serra often worked as a delivery employee at The Picnic Basket, Serra was not permitted to retain the full amount of gratuities left by customers in credit cards or cash when they paid their invoices.  The portion of gratuities retained by Defendants either in cash or credit cards varied from order to order, but most of the time was approximately fifty per cent (50%) of the amount left as a gratuity for Serra.  When Serra made a delivery for catering orders to offices or big companies, where the gratuities left by the customers was typically in the hundreds of dollars, Serra typically received from Defendants approximately ten to fifteen dollars ($10.00 - $15.00) each as a tip for those deliveries.  Tips were usually paid by Defendants with Serra's regular biweekly payment.  On a few occasions, when Plaintiff Serra received tips in cash of between five and ten dollars ($5.00 - $10.00), he was able to retain the full amount of those tips.

75.    Throughout the Serra Employment Period, Plaintiff Serra was paid biweekly in a combination of check and cash.  The pay stubs that accompanied the paychecks were inaccurate and only reflected a portion of the hours Plaintiff Serra worked during the specific work period, usually forty (40) hours each week, or less.  The remaining hours worked by Plaintiff Serra beyond forty (40) in a work week, were paid in cash at the same rate as his regular hours.  At the beginning of his employment, the pay stubs sometimes reflected more than forty (40) hours per week, but after a period of time, the defendants stopped including hours over forty (40) on the paystubs.

76.    At the beginning of his employment period, Defendants did not track Plaintiff Serra's work hours through any reliable method.   In or around 2015, Defendants started to track the hours worked by Plaintiff Serra with a computerized punching machine, which typically provided a small sheet of paper with the time Plaintiff Serra punched in and the time Plaintiff Serra punched out.  Often times, when he compared the small "time sheets" to his pay for the pay period, Plaintiff Serra was missing hours from his payment.

77.    <u>Plaintiff Luis Manuel Suarez</u> worked for The Picnic Basket located at 65 West 37th Street as a food prep, counter man, and delivery employee from in or around June 2013 to in or around February 2017 (the "Suarez Employment Period").    At times throughout the Suarez Employment Period, Plaintiff Suarez was also sent to work to The Picnic Basket located at 805 3rd Avenue.

78.    Throughout the Suarez Employment Period, Plaintiff Suarez generally worked five (5) days per week, with Saturdays and Sundays off.  Plaintiff Suarez typically worked from approximately 7:30 am to between approximately 3:30 pm and 4:00 pm, for a total of approximately forty (40) to forty-two and one-half (42.5) hours per week.  For a period of approximately six (6) months during his employment, Plaintiff Suarez was required to fill-in for the shifts of another employee, during which period he generally worked from approximately 7:30 am to approximately 7:30 pm, twelve (12) hours shifts, for a total of approximately sixty (60) hours per week.

79.     For his work, at the beginning of the Suarez Employment Period, Plaintiff Suarez was paid nine dollars and fifty cents ($9.50) per hour, including those beyond forty (40) in a given work week.  From in or around the beginning of 2015 to the end of 2016, Plaintiff Suarez was paid ten dollars and fifty cents ($10.50) per hour.  From in or around the beginning of 2017 to the end of the Suarez Employment Period, Plaintiff Suarez was paid the amount of eleven dollars and fifty cents ($11.50) per hour.  Plaintiff Suarez was paid for all hours at the same rate, including those beyond forty (40) in a given work week.

80.    Despite the fact that Plaintiff Suarez often worked as a delivery employee at The Picnic Basket, he was not permitted to retain the full amount of gratuities left by customers in credit cards or cash when they paid their invoices.  The portion of gratuities retained by Defendants

either in cash or credit cards varied from order to order, but most of the time was fifty per cent (50%) of the amount left as a gratuity for Plaintiff Suarez.

81.    At the beginning of his employment period, Plaintiff Suarez was paid his wages biweekly entirely in cash.  In or around 2015, Plaintiff Suarez was paid biweekly by a combination of check and cash.  The pay stubs that accompanied the check payments were inaccurate and only reflected a portion of the hours Plaintiff Suarez worked during the specific work period.

82.    At the beginning of his employment period, Defendants did not track Plaintiff Suarez's work hours through any reliable method.   In or around 2015, Defendants started to track the hours worked by Plaintiff Suarez with a computerized punching machine, which usually provided a small sheet of paper with the time Plaintiff Suarez punched in and the time Plaintiff Suarez punched out.

83.    Plaintiff Genesis Canepa worked for The Picnic Basket located at 65 West 37th Street and for The Picnic Basket located at 805 3rd Avenue, New York, as a food prep and counter employee from in or around March 2015 to in or around August 2017 (the "Canepa Employment Period").

84.    During the last portion of Plaintiff Canepa's employment at The Picnic Basket located at 805 3rd Avenue, in or around 2016, Plaintiff Canepa was often required to prepare food and orders for the Hokey Poke Hawaiian restaurant.  During her time working for both Hokey Poke and the Picnic Basket, there weer no divisions between the kitchen employees or the kitchen space and without clear division of responsibilities among the employees working for both restaurants.

85.    Throughout the Canepa Employment Period, she generally worked five (5) days per week, with Saturdays and Sundays off.  During the first couple of months of her employment

period, Plaintiff Canepa typically worked from approximately 8:00 am to approximately 4:00 pm, eight (8) hours shifts, for a total of approximately forty (40) hours per week.  After those couple of months, Plaintiff Canepa generally worked for approximately 8:00 am to between approximately 5:00 pm and 5:30 pm, and sometimes later, depending on how busy the café/deli was on a specific day or if she was required to cover for an absent employee, for a total of forty-five (45) to forty-seven and one half (47.5) hours per week, or sometimes more.

86.     For her work, from in or around 2015 to in or around 2016, Plaintiff Canepa was paid nine dollars ($9.00) per hour.  From in or around 2016 to in or around 2017, Plaintiff Canepa was paid eleven dollars ($11.00) per hour.  For the last portion of her employment, when her responsibilities grew exponentially including assisting with the food prep for the Hokey Poke restaurant, from in or around March 2017 to the end of her employment, Plaintiff Canepa was paid thirteen dollars ($13.00) per hour.

87.     During 2015, Plaintiff Canepa was paid her entire wages biweekly with a corporate check without wage statement.  From in or around the end of 2015 to the end of the Canepa Employment Period, Plaintiff Canepa was paid biweekly in a combination of check and cash.  The pay stubs that accompanied her pay checks were inaccurate and only reflected a portion of the hours Plaintiff Canepa worked during the specific work period.  All hours worked by Plaintiff Canepa, including those beyond forty (40) in a work week, were paid at the same hourly rate.

88.     At the beginning of the Canepa Employment Period, Defendants tracked Plaintiff Canepa's work hours through a punching machine that provided a small paper printout with the amount of hours Plaintiff worked during a given workweek.  Subsequently, beginning in or around 2015, Defendants tracked the hours worked by Plaintiff Canepa through a "tablet" which information was transferred to a computer that was under the control of Defendants.

**Defendants' Unlawful Corporate Policies**

89.     Plaintiffs and the Collective and Class Action Members were paid by the same corporate policies of Defendants, including failing to pay overtime premiums, spread-of-hours premiums and failing to provide proper wage statements and wage notices.

90.     Defendants did not provide Plaintiffs or the Collective and Class Action Members with proper wage notices at the time of hire or by February 1 of each year.

91.     Defendants failed to provide accurate wage statements to Plaintiffs and the Collective and Class Action Members which reflected, among other information, all hours worked, including overtime hours, the regular and overtime pay rate(s) during the pay period.

92.     Despite the fact that Plaintiffs typically worked over forty (40) hours each week, Defendants did not pay them overtime premiums of one and one-half (1.5) their hourly rate.

93.     Despite the fact that Plaintiffs regularly worked in excess of ten (10) hours per day, Defendants failed to pay Plaintiffs and the Collective and Class Action Members an extra hour of minimum wage for such days.

94.      Defendants unlawfully withhold a portion of the gratuities received by the Plaintiffs and the Collective and Class Members during their employment with Defendants.

95.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

96.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

98.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

98.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

100.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

101.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

103.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

104.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiffs' and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

106.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FIFTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

107.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.     Defendants have willfully failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

109.     Due to Defendants' violations of the NYLL, Plaintiffs and Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

110.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

111.    Defendants have willfully failed to compensate Plaintiffs and the Class Members for all gratuities earned by withholding and retaining approximately fifty percent (50%) of the tips left by the cusomters for the Plaintiffs and Class Members, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all gratuities withheld by Defendants.

112.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of Plaintiffs NYLL claims as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the

FLSA and NYLL;

e. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of compensatory damages as a result of the Defendants' willful failure to pay overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime premium compensation pursuant to the FLSA, NYLL and supporting regulations;

h. An award of compensatory damages as a result of the Defendants' willful failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

i. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay spread-of-hours premiums compensation pursuant to the NYLL and supporting regulations;

j. An award of damages arising out of the non-payment of gratuities;

k. An award of liquidated damages arising out of the non-payment of gratuities;

l. An award of fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(1) pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 §

198(1-b);

m. An award of two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195(3) pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

n. An award of prejudgment and post-judgment interest;

o. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
         January 8, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y Hokey Poke y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_Elvys Reyes Acosta_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y Hokey Poke y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Albert Ramon Rivera_
Firma

_Albert RaMoN RiveRa_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Ramon Serra_
Firma

_RAMON SERRA_
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y Hokey Poke y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____          _____
            Firma                                    Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Picnic Basket y Hokey Poke y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Genesis Canepa Hicaldo
Nombre Escrito