# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                                                                           JULY 27, 2018
PELTON@PELTONGRAHAM.COM

<u>**VIA ECF**</u>

Chief Magistrate Judge Debra C. Freeman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17A
New York, New York 10007-1312

      Re:    *Reyes, et al. v. The Picnic Basket Inc., et al.*
             <u>**Civil Action No. 18 Civ. 00140 (VEC) (DCF)**</u>

Dear Judge Freeman:

      This office represents named plaintiffs Elvys Reyes, Albert Ramon Rivera, Perfecto Perez, Ramon Serra, Luis Manuel Suarez and Genesis Canepa (collectively, the "Named Plaintiffs") and opt-in plaintiff Luis Zeledon (the "Opt-in Plaintiff" and, together with the Named Plaintiffs, the "Plaintiffs").  Plaintiffs filed a wage and hour lawsuit against The Picnic Basket, Inc., 805 The Picnic Basket LLC, Y.D.V.S. LLC, John Doe Corp. (representing the active New York Corporation doing business as Hokey Poké Hawaiian restaurant), Yariv Stav ("Y. Stav") and David Stav ("D. Stav") (collectively the "Defendants"). This letter is submitted jointly with counsel for the Defendants, pursuant to the Fair Labor Standards Act ("FLSA") and in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). Counsel for the parties respectfully submit that the attached negotiated settlement agreements constitute a fair and reasonable compromise of this matter which should be approved by the Court.[1]

**I.     Background and Procedural History**

      The Named Plaintiffs commenced this action on January 8, 2018 by filing a Class and Collective Action Complaint against Defendants alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. and New York Labor Law, §§ 650 *et seq*. ("NYLL"). (*See generally* Dkt. No. 1). Opt-in Plaintiff Zeledon subsequently exercised his right to join the action by filing a consent to become a party plaintiff form with the Court on March 2, 2018. (Dkt. No. 25). Defendants The Picnic Basket, Inc., Y.D.V.S. LLC, Y. Stav and D. Stav filed their Answer to the Complaint on February 26, 2018, denying all material allegations. (Dkt. No. 23). Plaintiffs'

---

[1] The attached agreements are signed by all parties with the exception of Defendants. However, the parties anticipate that the remaining parties will sign shortly. The parties will submit both fully-executed agreements to the Court as soon as we are able to obtain all signatures.

counsel and counsel for The Picnic Basket, Inc., Y.D.V.S. LLC, Y. Stav and D. Stav, Joshua Levin-Epstein, appeared for an initial conference before Judge Caproni on March 2, 2018, wherein the parties discussed a discovery schedule. On March 13, 2018 and June 11, 2018, Mr. Levin-Epstein produced certain time and payroll records for the five (5) Named Plaintiffs. Plaintiffs served formal discovery demands upon Defendants on March 20, 2018 and also produced approximately two hundred and fifty (250) pages of documents, including paystubs, time sheets, envelopes, W-2s and tip sheets.

On April 9, 2018, Plaintiffs filed a Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to Be Issued to All Persons Similarly Situated, which was denied on May 22, 2018. (Dkt. Nos. 30-32, 39). Counsel for 805 The Picnic Basket LLC, Eli Freedberg, filed a notice of appearance on June 1, 2018. (Dkt. No. 40). On June 20, 2018 and June 25, 2018, Mr. Levin-Epstein responded to Plaintiffs' discovery requests and produced additional time records concerning the Plaintiffs, including Opt-in Plaintiff Zeledon, as well as records relating to a P.O.S. system hosting subscription, logs of orders placed through various delivery services, and a brief video showing the clock-in procedure using Defendants' timekeeping software. On June 26, 2018, Plaintiff Canepa, who performed work exclusively at the 805 3rd Avenue, New York, NY 10022 location, reached a settlement with Defendant 805 The Picnic Basket LLC. Plaintiff Canepa and Defendant 805 The Picnic Basket LLC are hereinafter referred to as the "3rd Avenue Parties." The remaining plaintiffs, with the exception of Plaintiff Zeledon, and Defendants The Picnic Basket, Inc., Y.D.V.S. LLC, Y. Stav and D. Stav subsequently participated in a settlement conference before this Court on June 27, 2018, which ultimately resulted in the settlement of this action. Plaintiffs Reyes, Rivera, Perez, Serra, Suarez and Zeldon and Defendants The Picnic Basket, Inc., Y.D.V.S. LLC, Y. Stav and D. Stav are hereinafter be referred to as the "37th Street Parties."

**II.   The Settlements Account for Litigation Risk and Compensate Plaintiffs for Alleged Substantial Damages**

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. As mentioned above, starting in March 2018, Defendants have produced voluminous time and payroll records showing hours allegedly worked and wages paid to the Plaintiffs. Throughout the litigation, Plaintiffs have disputed the accuracy of Defendants' records. Specifically, Plaintiffs allege that they typically received a paystub that reflected only a portion of the hours that they worked during a particular pay period, while the remaining hours worked were paid in cash at the same hourly rate as their regular hours without any corresponding paystub or wage statement. Further, Plaintiffs allege that the hours contained in Defendants' time records did not reflect the schedules that they typically worked and assert that while they would typically provide Defendants with the total number of hours that they worked at the end of each week, they were not required to clock in or out until approximately mid-2015. Defendants have always maintained that their wage and hour records are accurate and reflect the precise hours that Plaintiffs worked each day. Defendants have also produced wage notices but, Plaintiffs do not recall ever seeing such documents, much less signing them. In total, Defendants have produced over one thousand five hundred (1,500) pages of records as of the date of this submission.

The parties have also disputed whether Plaintiffs are owed damages of any kind for unlawfully withheld gratuities. Throughout the litigation, Plaintiffs have argued that on numerous occasions, Defendants retained approximately fifty percent (50%) of the amount left as a gratuity for them when they performed deliveries. Plaintiffs further allege that when they made a delivery for large catering orders to offices or big companies, where the bill was typically in the hundreds of dollars, they received a maximum of ten to fifteen dollars ($10.00 - $15.00) as a tip for those deliveries. Defendants have vigorously denied that they retained any portion of Plaintiffs' gratuities and claim that Defendants typically gave Plaintiffs who performed tipped delivery work a minimum tip amount, regardless of whether a customer left a tip, such that Plaintiffs' alleged unpaid tip damages would be extremely low, if not nonexistent.

Although it is Plaintiffs' position that Defendants' records are inaccurate, Plaintiffs recognize that the fact that Defendants maintain time and pay records provides a steep obstacle to succeeding on their claim and that these documents could potentially limit or even eliminate the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' records. Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after trial. Based on these disputes, the parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiffs' FLSA claims, but also their pendant state law claims.[2]

Perhaps the biggest litigation risk, however, is Defendants' ability to pay a judgment if one were ultimately obtained by Plaintiffs. Defendants' business is a small, two (2)-location restaurant with stagnant or declining sales, and Defendants are otherwise without significant assets. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer the likelihood of settling for an agreed upon sum that is likely to be collectable rather than risk forcing Defendants into bankruptcy should litigation proceed to trial.

As set forth above, Plaintiffs' counsel created a damages analysis based largely on the information contained in signed declarations that were submitted as exhibits to Plaintiffs' 216(b) motion. For Plaintiff Canepa, Plaintiffs relied upon certain records from Defendants showing Canepa's clock-in and clock-out times for each pay period in order to determine the total number of hours that she worked each week, as well as the number of days that she worked in excess of ten (10) hours each pay period for calculating unpaid spread-of-hours premiums. Because Defendants did not provide records for Canepa's entire employment period, Plaintiffs relied upon Canepa's best estimates of the hours that she worked and the wages that she was paid for the several months for which Plaintiffs do not have records.

For the six (6) 37th Street Plaintiffs, this analysis resulted in approximately $20,973.88 in unpaid overtime, $23,419.29 in unpaid minimum wages, $6,522.20 in unpaid spread-of-hours premiums, and $9,543.86 in off-the-clock time for Plaintiff Zeledon, who alleges that pursuant to

---

[2] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

an agreement with D. Stav, he was not paid wages of any kind after 2:00 pm but was permitted to keep all of his tips from deliveries during this time frame. Thus, in total, Plaintiffs calculated approximately $60,459.22 in unpaid wages. However, while Plaintiffs' analysis assumed that Plaintiffs Perez and Zeledon were entitled to the difference between the applicable full minimum wage rate and the hourly rate that they received due to Defendants' alleged failure to provide Plaintiffs with proper notice of their reliance on the tip-credit minimum wage, and because Defendants retained a portion of Plaintiffs' gratuities, this claim was not specifically pled in Plaintiffs' Complaint. Further, although Plaintiffs calculated $32,792.86 in unpaid tips using an estimate of fifty dollars ($50.00) per week, as stated above, if Defendants' description of the tip scheme is accurate, it is possible that Plaintiffs' tip damages would be significantly reduced. With unpaid gratuities, wage statement and wage notice damages, statutory interest at 9% per annum and the maximum amount of FLSA and NYLL liquidated damages, Plaintiffs calculated a maximum possible recovery of $153,252.08 for the six (6) 37th Street Plaintiffs whose claims were resolved at the settlement conference.

Plaintiffs calculated that Plaintiff Canepa is owed $1,934.56 in unpaid overtime, $480.50 in unpaid spread-of-hours premiums for a total of $2,415.06 in unpaid wages. With damages for wage notice and wage statement violations, interest and liquidated damages, Plaintiffs calculated a maximum possible recovery to Canepa of $15,303.85.

In light of the litigation risks outlined above, Defendants' ability to pay, which was a substantial factor in ultimately reaching the settlement numbers that were agreed to by all the parties, and the risks associated with establishing the calculated damages and proceeding to trial, the parties believe that the proposed settlements are fair and reasonable. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. As such, the risks and uncertainties discussed above are substantial.

### III.    Settlement Terms

As set forth in the settlement agreement attached hereto as Exhibit A, the 37th Street Parties have agreed to settle this action for the total settlement amount of fifty-five thousand dollars ($55,000.00). Of that amount, $18,859.39 is payable to Plaintiffs' counsel, including $789.09 in expenses for counsel's costs in prosecuting the action,[3] plus attorneys' fees in the amount of one-third (33.33%) of the settlement amount after subtracting those expenses (i.e., $18,070.30). The remaining $36,140.61 is payable directly to the six (6) 37th Street Plaintiffs.

As set forth in the settlement agreement attached hereto as Exhibit B, the 3rd Avenue Parties have agreed to settle Plaintiff Canepa's claims for the total amount of eight thousand five hundred dollars ($8,500.00), consisting of $5,579.00 to be paid to Canepa and $2,921.00 to Plaintiffs's counsel (consisting of $131.51 in expense reimbursement and $2,789.49 in attorneys' fees). The

---

[3] As of the date of this submission, Plaintiffs' counsel's total costs in litigating this matter amount to $920.66. The parties divided Plaintiffs' counsel's expenses proportionately among the two (2) agreements based on the total amount of each settlement.

agreements attached hereto as Exhibits A and B will hereinafter be referred to as the "Settlement Agreements."

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release for any claims arising before Plaintiffs signed the Settlement Agreements. The parties also did not include a confidentiality provision in either agreement and have specifically included language in both agreements making it clear that nothing in the agreements precludes the parties from truthfully communicating their experiences concerning the Action or the settlement.

The agreements each include a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in these agreements is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds the Plaintiffs and the owners and agents of Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Plaintiffs to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No.

15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain attorneys' fees in the event that they prevail.

### IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit C), as of July 30, 2018, Plaintiffs' counsel had spent more than 154 hours in prosecuting and settling this matter, resulting in a lodestar of $39,243.36. Plaintiffs' counsel has spent $920.60 in actual litigation costs for filing and service of the complaint. The portion of the settlement amount that Plaintiffs seek as attorney's fees (i.e. $18,859.39 in the 37th Street Settlement and $2,291.00 in the 3rd Avenue Settlement, for a total of $21,150.39) represents one-third (1/3) of each respective settlement amount, after subtracting total actual litigation costs (proportionally divided between each settlement agreement based on the total amount of the settlement), which is less than the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of each settlement is fair and reasonable.

For the purposes of these settlements, Defendants take no position with respect to counsel's request for attorneys' fees.

### V. The Parties Believe that the Settlements Are Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[4] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14,

---

[4] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlements did not come about because of "overreaching" by the employer. To the contrary, the settlements were the result of vigorous arm's-length negotiations over several months and, for the 37th Street Parties, included a lengthy settlement conference before Your Honor. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlements are fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

* * * * *

In sum, it is apparent that the Agreements in this matter are fair and reasonable resolutions of the bona fide disputes between the parties. This is because the Agreements: (1) fairly account for Plaintiffs' possible recovery and Defendants' ability to mitigate or eliminate same; (2) enable the parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) are the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreements be approved in their entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| **PELTON GRAHAM LLC** | **Levin-Epstein & Associates, P.C.** |
| By:   */s/ Brent E. Pelton, Esq.* <br> Brent E. Pelton, Esq. <br> Taylor B. Graham, Esq. <br> 111 Broadway, Suite 1503 <br> New York, New York 10006 <br> Tel.: (212) 385-9700 <br><br> *Attorneys for Plaintiffs* | By:   */s/ Joshua Levin-Epstein, Esq.* <br> Joshua Levin-Epstein, Esq. <br> 1 Penn Plaza, Suite 2527 <br> New York, NY 10019 <br> Tel: (212) 792-0046 <br><br> *Attorneys for The Picnic Basket, Inc., Y.D.V.S. LLC, Y. Stav and D. Stav* |

**LITTLER MENDELSON, P.C.**

By:   */s/ Eli Zev Freedberg, Esq.*
Eli Zev Freedberg
900 Third Avenue
New York, NY 10022
Tel.: (212) 583-9600

*Attorneys for Defendant 805 The Picnic Basket LLC*

Enclosures